NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RYAN MAYS,<br><br>               Plaintiff,<br><br>        v.<br><br>THE ALBERT M. "BO" ROBINSON ASSESSMENT & TREATMENT CENTER, *et al.*,<br><br>               Defendants. | Civil Action No. 17-4352 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon two motions: (1) Defendant Lamar Norman's ("Norman") Motion for Summary Judgment (ECF No. 114); and (2) Defendants Community Education Centers, Inc. ("Community Education") and The Albert M. "Bo" Robinson Assessment & Treatment Center's ("Robinson," collectively with Community Education, "Robinson Defendants," and collectively with Community Education and Norman, "Defendants") Motion for Summary Judgment (ECF No. 116). Plaintiff Ryan Mays ("Plaintiff") opposed both motions (ECF Nos. 120, 121), and Defendants replied (ECF Nos. 122, 123). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, the Court grants in part and denies in part Defendants' Motions for Summary Judgment.

## I.    BACKGROUND

The following facts are drawn from Norman's Statement of Material Facts ("NSOF") (NSOF, ECF No. 114-2), Robinson Defendants' Statement of Material Facts ("RSOF") (RSOF,

ECF No. 116-2), Plaintiff's Responsive Statement of Material Facts to Norman's Statement of Facts ("PNSOF") (PNSOF, ECF No. 130), and Plaintiff's Responsive Statement of Material Facts to Robinson Defendants' Statement of Facts ("PRSOF") (PRSOF, ECF No. 131), and are undisputed by the parties unless otherwise noted.

## A.    Factual Background

This dispute arises out of an alleged sexual assault perpetrated on Plaintiff on June 7, 2015, by Norman, an operations counselor, at Robinson, a halfway house. (NSOF ¶ 1; PNSOF ¶ 1.) Plaintiff, who has a substantial criminal record, has been an inmate at Robinson on two occasions, the second of which was in 2015 when the alleged incident occurred. (NSOF ¶¶ 3-17; PNSOF ¶¶ 3-17.) Specifically, "Plaintiff was incarcerated at the Southern State Correctional Facility for a firearms charge" in or about November 2013 before being transferred to Robinson in March of 2015 "to serve a term of ninety . . . days." (RSOF ¶¶ 6-7; PRSOF ¶¶ 6-7.) At the time, Norman was employed by Robinson Defendants.[1] (NSOF ¶ 18; PNSOF ¶ 18.) Prior to this incident, Norman had never been fired from any job or sanctioned for any reason, and had no prior disciplinary actions or complaints lodged against him while employed at Robinson. (NSOF ¶¶ 19-20; PNSOF ¶¶ 19-20.) Norman's responsibilities while employed by Robinson included maintaining safety and conducting searches of the inmates' housing area. (NSOF ¶ 22; PNSOF ¶ 22.) "Norman did not have the authority to revoke parole, extend confinement, or return a resident to state prison." (NSOF ¶ 23; PNSOF ¶ 23.)

---

[1] Specifically, Norman worked at Robinson and Robinson was operated by Community Education. (RSOF ¶ 5; PRSOF ¶ 5.)

### 1.    *Robinson's Hiring Practices and Hiring of Norman*

Norman was offered employment by Robinson Defendants on November 21, 2013, to begin working at Robinson on January 6, 2014. (RSOF ¶ 9; PRSOF ¶ 9.) Prior to commencing employment, all employees, including Norman, were required to pass a background check. (RSOF ¶ 10; PRSOF ¶ 10.) Employees, including Norman, were provided an employee handbook, which they were required to acknowledge receipt of. (RSOF ¶ 11; PRSOF ¶ 11.) "Norman executed the Employee Acknowledgement of Receipt, stating that he . . . received a copy of the . . . Employee Handbook" on December 19, 2013. (RSOF ¶ 12; PRSOF ¶ 12.) "Pursuant to the Employee Handbook, behavior that is considered gross misconduct may result in the termination of an employee." (RSOF ¶ 20; PRSOF ¶ 20.) "Examples of gross misconduct outlined in the Employee Handbook include . . . fraternization with residents and any act of harassment, sexual, racial or other." (RSOF ¶ 21; PRSOF ¶ 21.)

Robinson mandated trainings for all new employees and yearly trainings for all employees. (RSOF ¶ 13; PRSOF ¶ 13.) "During these trainings, topics . . . included . . . policies, rules and regulations, the . . . Prison [Rape] Elimination Act [('PREA')], [s]exual [h]arrassment, [d]iversity, HIPAA and ethics, and security." (RSOF ¶ 14; PRSOF ¶ 14.) In December 2014, Norman, as all employees were required to do, filled out and executed an Annual PREA Disclosure, where he certified that during his employment, "he did not engage in or receive disciplinary action for any form of sexual misconduct." (RSOF ¶ 15; PRSOF ¶ 15.) Robinson Defendants further instructed employees that they were not permitted to engage in sexual relationships with residents. (RSOF ¶ 16; PRSOF ¶ 16.)

Robinson Defendants also require that all new hires undergo a minimum of "forty . . . hours of orientation training in a classroom setting[,]" and that "[a]fter completing th[at] orientation[,]

3

they "undergo on-the-job training of an additional forty . . . hours." (RSOF ¶¶ 17-18; PRSOF ¶¶ 17-18.) Additionally, "[a]fter the first year of employment, all employees receive a[] minimum of forty . . . hours of in-service training each year." (RSOF ¶ 19; PRSOF ¶ 19.)

### 2.    *The Alleged Incident — June 7, 2015*

On June 7, 2015, "after the evening medication call, . . . Norman sought Plaintiff's assistance" for trash duty. (RSOF ¶ 25; PRSOF ¶ 25.) "Plaintiff testified that while on 'trash detail' after dinner, he entered an elevator[,]" with Norman on the first floor. (NSOF ¶ 24; PNSOF ¶ 24.) Plaintiff further testified that "the elevator door opened on the third floor" and "he went out, grabbed the mini hot dog cart and a bag of trash, and re-entered the elevator, all while Norman remained in the elevator waiting for him." (NSOF ¶ 25; PNSOF ¶ 25.) "Plaintiff claims that the elevator door then shut, but the elevator did not move." (NSOF ¶ 26; PNSOF ¶ 26.) According to Plaintiff, Norman then made sexual advances toward Plaintiff. (NSOF ¶ 27; PNSOF ¶ 27.) "Plaintiff asserts that he pleaded with Norman to not do this . . . , but Norman allegedly insisted on doing as he pleased and threatened to file a false disciplinary charge if Plaintiff refused his advances." (NSOF ¶ 30; PNSOF ¶ 30.) "Plaintiff testified that because he did not want to go back to prison, he said to Norman, 'man, do what you got to do.'" (NSOF ¶ 31 (quoting Ex. E to Flynn Cert. ("Mays Dep. Tr.") 74:21-24, ECF No. 114-4); PNSOF ¶ 31.) "Following this, Norman reportedly dropped to one knee" and "attempted to perform oral sex upon Plaintiff." (NSOF ¶ 32; PNSOF ¶ 32; RSOF ¶ 27; PRSOF ¶ 27.) Plaintiff testified that the alleged assault lasted only a few seconds before Plaintiff pushed Norman off and told him to stop, which Norman did. (NSOF ¶ 33; PNSOF ¶ 33.) "Norman then reportedly" opened the door to the elevator "and Plaintiff kicked all the trash out of the elevator into the common area and left." (NSOF ¶ 34; PNSOF ¶ 34.) Plaintiff did not report the incident to anyone that night. (NSOF ¶ 35; PNSOF ¶ 35.)

Plaintiff told an operations counselor, Mr. DeCosta ("DeCosta"), about what had happened the next morning. (NSOF ¶ 35; PNSOF ¶ 35; RSOF ¶ 28; PRSOF ¶ 28.) DeCosta then informed the Deputy Director. (RSOF ¶ 29; PRSOF ¶ 29.) Robinson Defendants thereafter preserved "all relevant video surveillance of the elevator area, took a written statement from . . . Plaintiff, contacted local law enforcement, and completed a PREA report[.]" (RSOF ¶ 30; PRSOF ¶ 30.) "This led to the supervisor, parole[,] and then the Mercer County Prosecutor's Office ('MCPO') coming in to speak to Plaintiff and asking if he wanted to press charges." (NSOF ¶ 36; PNSOF ¶ 36.) "Plaintiff responded in the affirmative and was . . . brought to a hospital for treatment" before being "taken to his sister's home" and not returning to Robinson. (NSOF ¶ 37 (citation modified); PNSOF ¶ 37.)

"On June 8, 2015, Vincent Wojcichowicz and Karl Klein conducted an investigation into Plaintiff's complaint[.]" (RSOF ¶ 32; PRSOF ¶ 32.) As a result, on June 10, 2015, Norman was terminated for violating Robinson policies, specifically "inappropriate behavior and failure to comply with the standard of conduct, job performance, and [Robinson Defendants'] policies and practices." (RSOF ¶ 33; PRSOF ¶ 33.)

### B.   Procedural History

Plaintiff filed his Complaint in the Superior Court of New Jersey, Law Division, Mercer County against Defendants asserting ten claims for relief: (1) violations of his Eighth and Fourteenth Amendment rights against all Defendants ("First Claim for Relief"); (2) violations of his Eighth and Fourteenth Amendment rights against Norman ("Second Claim for Relief"); (3) violations of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, *et seq.*, against all Defendants ("Third Claim for Relief"); (4) common law assault and battery against Norman ("Fourth Claim for Relief"); (5) common law intentional or reckless infliction of

emotional distress ("IIED") against Norman ("Fifth Claim for Relief"); (6) vicarious liability as to the common law torts of Norman against Robinson Defendants ("Sixth Claim for Relief"); (7) negligent hiring against Robinson Defendants ("Seventh Claim for Relief"); (8) negligent supervision against Robinson Defendants ("Eighth Claim for Relief"); (9) punitive damages under the New Jersey Punitive Damages Act ("NJPDA"), N.J. Stat. Ann. § 2A:15-5.9, *et seq.*, against all Defendants ("Ninth Claim for Relief")[2]; and (10) the same claims against fictious entities and individuals ("Tenth Claim for Relief"). (Compl. ¶¶ 54-109, ECF No. 114-4.) Robinson Defendants removed the matter to this Court and filed their Answer to Plaintiff's Complaint, as did Norman. (Not. of Removal, ECF No. 1; Robinson Defs.' Answer, ECF No. 4; Norman's Answer, ECF No. 19.) Defendants thereafter filed the instant Motions for Summary Judgment. (Norman Mot. for Summary J., ECF No. 114; Robinson Defs.' Mot. for Summary J., ECF No. 116.) Plaintiff opposed both motions (Pl.'s Opp'n Br. to Norman Motion for Summary J. ("Pl.'s Opp'n to Norman"), ECF No. 121; Pl.'s Opp'n Br. to Robinson Defs.' Mot. for Summary J. ("Pl.'s Opp'n to Robinson"), ECF No. 120), and Defendants replied (Norman Reply, ECF No. 122; Robinson Defs.' Reply, ECF No. 123). Additionally, Norman filed correspondence in limited response to Robinson Defendants' Motion for Summary Judgment. (Norman Correspondence, ECF No. 117.) The Court, thereafter, requested supplemental briefing which the parties filed. (Mem. Order, ECF No. 132; Norman's Suppl. Correspondence, ECF No. 133; Robinson Defs.' Suppl. Brief, ECF No. 134; Pl.'s Suppl. Br., ECF No. 135.)

---

[2] The Court notes that, although pled as a claim for relief, damages are a remedy, and not an independent claim for relief. *See Bellak v. Wells Fargo & Co.*, No. 17-2757, 2017 WL 6496563, at *5 (D.N.J. Dec. 19, 2017); *Ali v. D.O.C.*, No. 08-2425, 2008 WL 5111274, at *13 (D.N.J. Nov. 25, 2008).

6

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a summary judgment motion, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

7

immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a summary judgment motion, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249-50. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III.    **DISCUSSION**

The Court first addresses Norman's Motion for Summary Judgment before moving on to Robinson Defendants' Motion for Summary Judgment.

### A.    **Norman's Motion for Summary Judgment**

Norman moves for summary judgment on all of Plaintiff's claims. (*See generally* Norman Moving Br., ECF No. 114-1.) Norman argues that: (1) he was not a state actor and therefore cannot be liable for Constitutional and civil rights violations; (2) even if he was a state actor, Plaintiff cannot establish a violation of the Eighth or Fourteenth Amendments; (3) Plaintiff cannot establish his NJCRA claim; (4) Plaintiff's tort claims are barred by his failure to file a tort claims notice under the New Jersey Tort Claims Act ("NJTCA"); (5) Plaintiff cannot meet the NJTCA injury threshold; (6) Plaintiff's intentional/reckless infliction of emotional distress claim fails under both the NJTCA and New Jersey's common law standard; and (7) Plaintiff's assault and battery claim is barred by the tort claims act and fails independently under common law principals. (Norman Moving Br. 5-28, ECF No. 114-1.)

### 1. Plaintiff's Constitutional Claims—First, Second, and Third Claims for Relief

#### a. Whether Norman was a State Actor

As a threshold matter, Norman argues that he was a private employee, performing limited custodial duties, and not a state actor, and that the alleged conduct was a private, not state action. (Norman's Moving Br. 3-11.)

Section 1983 provides private citizens a cause of action for violations of federal law by state officials. 18 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that [Section] 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny County*, 757 F.3d 99, 104 (3d Cir. 2014)).

To prevail under Section 1983, a plaintiff must establish two elements: (1) "that [he] suffered a violation of a right secured by the Constitution and laws of the United States"; and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Coe v. Pa. State Univ.*, No. 14-1818, 2016 WL 1162344, at *13 (M.D. Pa. Mar. 24, 2016) (citation modified) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "Private actors may be regarded as acting under color of state law pursuant to [Section] 1983." *Pierce v. Gov't Offs.*, No. 25-525, 2025 WL 993368, at *3 (M.D. Pa. Apr. 2, 2025) (citing *Donnell v. Corr. Health Servs., Inc.*, 405 F. App'x 617, 622 n.5 (3d Cir. 2010)).

The Third Circuit has "articulated 'three broad tests' to determine if a private defendant is a state actor[.]" *Id.* (quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)). First, "whether the

9

defendant exercised powers that are 'traditionally the exclusive prerogative of the state[.]'" *Id.* (quoting *Kach*, 589 F.3d at 646). Second, "whether the defendant acted 'with the help of or in concert with state officials[.]'" *Id.* (quoting *Kach*, 589 F.3d at 646). Or third, "whether the 'state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity[.]'" *Id.* (quoting *Kach*, 589 F.3d at 646). "The inquiry is fact-specific" and the principal issue of such inquiry is "whether there is a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (citation modified).

Norman argues that: (1) his "duties were strictly custodial and administrative[;]" (2) "his authority was sharply limited[;]" and (3) "the alleged sexual act was a personal act, not the exercise of governmental power[,]" and therefore Plaintiff's claims against him fail as a matter of law. (Norman Moving Br. 7.) To support his position, Norman cites, among other cases, *Kelly v. New Jersey Department of Corrections*, No. 11-7256, 2012 WL 6203691 (D.N.J. Dec. 11, 2012). (*Id.* at 8-9.) Plaintiff argues in opposition that he has produced evidence that shows the custodial nature of the facility and of Norman's delegated authority, which, he contends, was missing in *Kelly*. (Pl.'s Opp'n Br. to Norman 11.)

In *Kelly*, the Court, deciding a motion to dismiss, noted that "[f]ederal courts are split on the question [of] whether organizations that operate halfway houses, and their employees, are state actors for purposes of [Section] 1983." *Kelly*, 2012 WL 6203691, at *6. The Court found that the plaintiff "failed to allege facts that would permit [it] to find that [the halfway house] or its employees [] functioned as a state actor." *Id.* The Court explained that the plaintiff failed to "describe the nature of the contractual relationship" that the halfway house had "with the New Jersey Department of Corrections" and that plaintiff did "not describe the nature of the services

10

provided, or the nature of the population to whom, those services are provided." *Id.* The Court also noted that because plaintiff "was assigned to the halfway house as a condition of parole . . . the halfway house does not appear to have been functioning as a correctional facility." *Id.* at *6 n.4.

Here, however, Plaintiff was serving part of his custodial sentence or incarceration resulting from a firearms charge during his time as an inmate at Robinson—not a condition of parole. (RSOF ¶¶ 6-7 (explaining that "Plaintiff was incarcerated at the Southern State Correctional Facility for a firearms charge" in or about November 2013 before being transferred to Robinson in March of 2015 "to serve a term of ninety . . . days"); PRSOF ¶ 6 ("Undisputed."), ¶ 7 ("Undisputed.").) "The function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state." *Adams v. Adelphoi USA*, No. 23-3684, 2025 WL 2582902, at *5 (E.D. Pa. Sep. 4, 2025).

Here, based on the fact that Plaintiff was serving a portion of his carceral sentence while at Robinson, there is at least a dispute of fact and a rational juror could find that Norman, as an employee of Robinson, was a state actor. *See Amig v. County of Juniata*, 432 F. Supp. 3d 481, 486 (M.D. Pa. 2020) (collecting cases and explaining that it is "well-established that 'the function of incarcerating people, whether done publicly or privately, is the exclusive prerogative of the state'" (quoting *Giron v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1245, 1249 (D.N.M. 1998)); *Melvin v. Connecticut*, No. 16-537, 2017 WL 3841689, at *3 (D. Conn. Sep. 1, 2017) (noting that "the actions of [the] employees of a private drug rehabilitation facility may be attributed to the state if the plaintiff was confined at the facility pursuant to an alternative-to-incarceration program"); *Williams v. Intervention, Inc.*, No. 23-1201, 2024 WL 1088359, at *4 (D. Colo. Feb. 20, 2024) (noting that an employee at a private community corrections facility was performing a function traditionally exclusively reserved to the state); *Mizrahi v. Rankins*, No. 14-6692, 2015 WL

11

13916801, at *17 (C.D. Cal. June 30, 2015) (denying summary judgment and explaining that "a rational trier of fact could find that" employees of a private substance abuse treatment center "performed the traditional public function of incarceration" and were therefore "state actors"), *R. & R. adopted*, No. 14-6692, 2015 WL 13916918 (C.D. Cal. Aug. 3, 2015); *United States v. Huart*, 735 F.3d 972, 975 (7th Cir. 2013) (noting that a "stay at [a] halfway house [i]s simply one particular way an inmate may serve a custodial sentence").

The Court, accordingly, next analyzes Plaintiff's Eighth and Fourteenth Amendment Claims, and Plaintiffs NJCRA claims.

### b.    *Plaintiff's Eighth Amendment Claim Against Norman*

The Eighth Amendment protects prison inmates against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 318 (1986). "To be actionable, the punishment must be 'objectively, sufficiently serious,' and the corrections officer must have a 'sufficiently culpable state of mind.'" *Drumgo v. Kuschel*, 811 F. App'x 115, 118 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Third Circuit has "previously recognized that sexual abuse of an inmate by a corrections officer may violate the Eighth Amendment." *Id.* (citing *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). "As with other Eighth Amendment claims, 'the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind.'" *Id.* (quoting *Ricks*, 891 F.3d at 475). "[A] single incident, [moreover,] if sufficiently serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents." *Id.* (quoting *Ricks*, 891 F.3d at 477). "In the 'contextual, fact-specific' inquiry into an incident, 'the scope, place, and timing of the offensive conduct will bear on its severity, as will the details of the alleged contact.'" *Id.* (citation modified) (quoting *Ricks*, 891 F.3d at 478).

Here, the disputed facts preclude summary judgment on Plaintiff's Eighth Amendment claim. When viewed in the light most favorable to Plaintiff, such facts are sufficient for a reasonable juror to conclude that the incident was "objectively, sufficiently, intolerable and cruel, capable of causing harm," and that Norman "had a culpable state of mind." *Id.* (citation modified). Plaintiff testified that Norman, while acting in his role as counselor, directed him into the elevator as part of a work assignment and sexually assaulted him. (Mays Dep. Tr. 67:2-8, 73:14-75:10.) Such conduct has no legitimate penological purpose and a reasonable juror could conclude that such conduct satisfies the objective and subjective prongs because a reasonable juror could find that Norman's exploitation of his authority was intended to either gratify Norman or humiliate Plaintiff. *See Ricks*, 891 F.3d 467-77.

Moreover, the central narrative at issue—whether the assault occurred—is disputed. (*See e.g.*, NSOF ¶¶ 28-33 (describing Plaintiff's account of the incident); PNSOF ¶¶ 28-33; NSOF ¶¶ 60-76 (describing Norman's competing account of the incident); PNSOF ¶¶ 60-76.) Such a dispute precludes summary judgment. *See Beam v. Township of Pemberton*, 2023 WL 2496460, at *9 (D.N.J. Mar. 14, 2023).

### c.    *Plaintiff's Fourteenth Amendment Claim against Norman*

Such a dispute also precludes summary judgment on Plaintiff's Fourteenth Amendment deprivation of liberty claim, because the Third Circuit recognizes that "sexual assault, which c[an] not . . . serve[] a legitimate governmental objective" can be a violation of the "right to personal bodily integrity protected by the Due Process Clause of the Fourteenth Amendment." *E. D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019). Because there is a dispute of fact as to whether or not Plaintiff was sexually assaulted by Norman, summary judgment is not appropriate. *See Foster v.*

13

*Mumford*, No. 99-871, 2002 WL 975997, at \*4 (D. Del. May 3, 2002) (denying summary judgment where there were disputes of fact surrounding alleged assaults).

The Court, accordingly, denies Norman's Motion for Summary Judgment as to Plaintiff's First, Second, and Third Claims for Relief asserted against Norman.[3]

### 2.   *Plaintiff's IIED Claim—Fifth Claim for Relief*

Norman argues that Plaintiff's IIED claim fails because Plaintiff's emotional distress does not rise to the levels required under New Jersey law.[4] (Norman Moving Br. 24-25.) To prevail on a claim of IIED, a Plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"; (3) the defendant's actions proximately caused the plaintiff emotional distress; and (4) that distress was "so severe that no reasonable [person] could be expected to endure it." *Soliman v. Kushner Co.*, 77 A.3d 1214, 1229 (N.J. Super. Ct. App. Div. 2013) (quoting *Segal v. Lynch*, 993 A.2d 1229, 1241-42 (N.J. Super. Ct. App. Div. 2010)); *Myers v. Benucci*, No. A-2507-24, 2026 WL 585808, at \*11 (N.J. Super. Ct. App. Div. Mar. 3, 2026). "Severe emotional

---

[3] For the same reasons, the Court denies Norman's Motion for Summary Judgment as to Plaintiff's NJCRA claim. *See Alexander v. Borough of Pine Hill*, No. 17-6418, 2018 WL 2215515, at \*3 (D.N.J. May 15, 2018) (explaining that the NJCRA, "like [Section] 1983, [requires that] . . . a person act[] under color of law" (citation modified)); *Est. of Lewis v. Cumberland County*, No. 16-3503, 2019 WL 7047220, at \*6 (D.N.J. Dec. 23, 2019) (noting that "courts interpret NJCRA claims 'analogously to [Section] 1983'" (citation omitted)).

[4] Norman also argues that Plaintiff's tort claims are barred because Plaintiff did not file a Tort Claims Notice as required by the New Jersey Tort Claims Act. (Norman's Moving Br. 18-26.) As discussed above, there is a question of fact as to whether Norman was acting under color of state law, which necessarily means that there is a question of fact as to whether a Tort Claims Notice was necessary. If Norman was a private employee of a private corporation, Plaintiff was not required to file a notice pursuant to the Tort Claims Act. N.J. Stat. Ann. §§ 59:1-3, 59:8-3; *see Gomes v. County of Monmouth*, No. A-1679-14T4, 2016 WL 1452892, at \*1 (N.J. Super. Ct. App. Div. Apr. 14, 2016) (explaining that pursuant to the Tort Claims Act a plaintiff does not need to serve notice upon a private government contractor).

distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so[.]" *Hawkins v. Borough of Barrington*, No. A-2848-16T1, 2018 WL 3945768, at *4 (N.J. Super. Ct. App. Div. Aug. 17, 2018) (citation omitted).

Here, there is at least a dispute of fact as to whether Plaintiff has established a claim of IIED against Norman. As discussed above, there is a dispute of fact as to whether Norman sexually assaulted Plaintiff. (*See e.g.*, NSOF ¶¶ 28-33 (describing Plaintiff's account of the incident); PNSOF ¶¶ 28-33; NSOF ¶¶ 60-76 (describing Norman's competing account of the incident); PNSOF ¶¶ 60-76.) There is therefore a dispute as to whether Norman acted intentionally or recklessly or whether his conduct was outrageous in character and extreme. *See Helbling v. Pebbles*, No. 24-1192, 2025 WL 2653577, at *11 (W.D. Pa. Sep. 16, 2025) (noting that the "determination of whether [a defendant's] conduct was intentional or reckless, [and] whether . . . [such] conduct caused emotional distress . . . are [disputes] of fact for the jury"). Plaintiff also testified that the incident caused him ongoing distress, humiliation, and emotional disturbance (Mays Dep. Tr. 82:19-85:9), and sought therapy following the incident (NSOF ¶¶ 85-86; PNSOF ¶¶ 85-86). There is, accordingly, at least a dispute as to whether Plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it. *See Gould v. JPMorgan Chase Bank, N.A.*, No. 21-04663, 2021 WL 4272858, at *4 (D.N.J. Sep. 21, 2021) (explaining that the severity of a plaintiff's emotional distress "is largely a [dispute] for the finder of fact"); *Helbling*, 2025 WL 2653577, at *11 ("[T]he severity of the emotional distress [is a dispute] of fact for the jury.").

Because there are disputes of fact as to Plaintiff's IIED claim, the Court denies Norman's Motion for Summary Judgment as to Plaintiff's Fifth Claim for Relief.

15

### 3.    *Plaintiff's Assault and Battery Claim—Fourth Claim for Relief*

Norman argues, among other things, that he is entitled to summary judgment on Plaintiff's assault and battery claim because "the record demonstrates that [he] and Plaintiff engaged in a consensual encounter." (Norman's Moving Br. 26.) To establish a claim of common law assault, a Plaintiff must prove that a defendant: "[(1)] intend[ed] to cause a harmful or offensive contact with the person of [an]other . . . or an imminent apprehension of such a contact[;] and [(2)] the other is thereby put in such imminent apprehension." *Role v. Seabras Supermarket*, No. A-1189-24, 2026 WL 90157, at *2 (N.J. Super. Ct. App. Div. Jan. 13, 2026) (quoting *Wigginton v. Servidio*, 734 A.2d 798, 806 (N.J. Super. Ct. App. Div. 1999)). "The tort of battery rests upon a nonconsensual touching." *Id.* (citation omitted).

Here, there is a dispute of fact regarding the contact that forms the basis of Plaintiff's assault and battery claim. Plaintiff testified that Norman directed him into the elevator and sexually assaulted him, which, if true, would satisfy both the apprehension and contact elements of assault as well as the "nonconsensual touching" required for a battery. (Mays Dep. Tr. 67:2-8, 73:14-75:10.) Norman, however, testified to the contrary. (Ex. G to Norman's Mot. for Summary J. (Norman Dep. Tr.) 57:22-24, 58:5-6, 72:24-73:10.) There is, accordingly, a dispute of fact which precludes summary judgment on Plaintiff's Fourth Claim for Relief. *See Carpenters Combined Fund, Inc. by Klein v. Lucci*, No. 13-1287, 2017 WL 4023317, at *13 n.19 (W.D. Pa. Sep. 13, 2017) ("[C]ompeting testimony presents a[] classic dispute of fact which precludes the [c]ourt from entering summary judgment."); *see also Rockwell Automation, Inc. v. Radwell Int'l, Inc.*, 416 F. Supp. 3d 366, 371 (D.N.J. 2019) ("When contradictory, material facts are presented, a genuine dispute is raised and undercuts a decision for summary judgment.").

The Court therefore denies Norman's Motion for Summary Judgment as to Plaintiff's Fourth Claim for Relief.

16

**B.    Robinson Defendants' Motion for Summary Judgment**

Robinson Defendants move for summary judgment on all of Plaintiff's claims asserted against them. (*See generally* Robinson Defs.' Moving Br., ECF No. 116-1.) Robinson Defendants argue that: (1) Plaintiff cannot prove a prima facie failure to train and/or failure to supervise claim because there is no expert report to support such allegations; (2) Plaintiff is unable to meet the requirements to hold Robinson Defendants liable under the theory of vicarious liability; (3) claims of negligent hiring and supervision require expert testimony to show what was done improperly and what should have been done to avoid the injury; and (4) Plaintiff is unable to show any damages suffered in the absence of expert reports. (Robinson Defs.' Moving Br. 4-19, ECF No. 116-1.)

The Court addresses each argument in turn.

**1.    *Failure to Train and Supervise—First and Third Claims for Relief***

Robinson Defendants argue that Plaintiff's constitutional claims brought pursuant to a failure to train and supervise theory fails as a matter of law because Plaintiff did not submit an expert report or testimony to support such allegations. (Robinson Defs.' Moving Br. 4-9, 12-14.) In opposition, Plaintiff argues that such claims do not require expert testimony, and there are disputes of fact on the issues that preclude summary judgment. (Pl.'s Opp'n to Robinson 13-17.)

Entities like Robinson Defendants cannot be found liable simply because they employ wrongdoers. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691-92 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003). For such an entity to be found liable under Section 1983, Plaintiff must establish that the entity had a relevant policy or custom, and that this policy or custom caused a violation of Plaintiff's constitutional rights. *See Natale*, 318 F.3d at 583-84; *accord Jiminez v. All Am. Rathskeller, Inc.*, 503 F. 3d 247, 249 (3d Cir. 2007)

(stating that a plaintiff must show a "direct causal link between a . . . policy or custom and the alleged constitutional deprivation") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

To maintain such a claim, a Plaintiff must "demonstrate that a[] . . . supervisory [d]efendant[] w[as] actually involved in the alleged unconstitutional conduct, or that they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Ledcke v. Pa. Dep't of Corr.*, 655 F. App'x 886, 889 (3d Cir. 2016) (quoting *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

Here, "the record is devoid of facts regarding the adequacy of training, [and] the Court will [therefore] grant summary judgment and dismiss Plaintiff's failure to train claim." *Sheppard v. Sheriff*, No. 11-2398, 2016 WL 3912845, at *7 (D.N.J. July 19, 2016) (granting summary judgment where the plaintiff "provided no information regarding the type of training provided"). Plaintiff cites *Estate of Borroto v. CFG Health Systems, LLC*, 751 F. Supp. 3d 443 (D.N.J. 2024), to support his argument that summary judgment is not appropriate because, he argues, there are factual disputes regarding whether Robinson Defendants' conduct amounts to negligence, recklessness, or deliberate indifference. (Pl.'s Opp'n to Robinson 14-15.) The plaintiff in *Borroto*, however, submitted several expert reports "which found seven separate deficiencies in the . . . protocols" at the institution and opined as to the actions of the institution and its failure to have proper policies and follow proper protocols. *Borroto*, 751 F. Supp. at 463-66.

There is no such evidence in the record here. (*See generally* RSOF; PRSOF.) While Plaintiff is correct that there does not necessarily need to be expert testimony to establish that Robinson Defendants failed to supervise and train staff, Plaintiff has not pointed to any evidence that would permit a reasonable juror to conclude that Robinson Defendants failed to properly train or supervise their employees. (*See generally* RSOF; PRSOF.) To the contrary, and as discussed

18

above, the facts are undisputed that: (1) Robinson Defendants conducted a background check on Norman which Norman passed prior to his employment (RSOF ¶ 10; PRSOF ¶ 10); (2) Robinson mandated trainings for all new employees and yearly trainings for all employees and that topics covered during the trainings included "policies, rules and regulations, the [PREA], [s]exual [h]arrassment, [d]iversity, HIPAA and ethics, and security" (RSOF ¶¶ 13-14 (citation modified); PRSOF ¶¶ 13-14); (3) in December 2014, Norman filled out and executed an Annual PREA Disclosure, where he certified that during his employment, "he did not engage in or receive disciplinary action for any form of sexual misconduct" (RSOF ¶ 15; PRSOF ¶ 15); (4) Robinson Defendants instructed employees that they were not permitted to engage in sexual relationships with residents (RSOF ¶ 16; PRSOF ¶ 16); (5) Robinson Defendants required that all new hires undergo a minimum of "forty . . . hours of orientation training in a classroom setting[,]" and that "[a]fter completing th[at] [o]rientation[,] they "undergo on-the-job training of an additional forty . . . hours" (RSOF ¶¶ 17-18; PRSOF ¶¶ 17-18); and (6) "[a]fter the first year of employment, all employees receive[d] a[] minimum of forty . . . hours of in-service training each year" (RSOF ¶ 19; PRSOF ¶ 19).

In opposition, Plaintiff also argues that he has produced evidence that Robinson Defendants were deliberately indifferent because they: (1) only investigated Norman after Plaintiff reported the assault; (2) had no procedure for tracking behavioral risks or violations of boundaries; and (3) Norman had access to residents in restricted areas, which violated facility policies. (Pl.'s Opp'n to Robinson 14.) Here, however, there is no dispute that: (1) Plaintiff reported the incident the day after it occurred (RSOF ¶ 28; PRSOF ¶ 28); (2) Robinson Defendants immediately investigated the incident when reported (RSOF ¶¶ 28-32; PRSOF ¶¶ 28-32); (3) Robinson Defendants fired Norman after their investigation (RSOF ¶ 33; PRSOF ¶ 33); (4) Plaintiff was discharged from the

19

facility the same day that he reported the incident (RSOF ¶ 31; PRSOF ¶ 31); (5) Robinson Defendants had training in place that addressed, among other things, the PREA (RSOF ¶¶ 13-14; PRSOF ¶¶ 13-14); (6) this incident is the only instance in the record where Norman may have accessed a resident in a restricted area (*see generally* RSOF; PRSOF); and (7) Robinson Defendants required employees, including Norman, to annually disclose and certify if they had received disciplinary action for any form of sexual misconduct (RSOF ¶ 15; PRSOF ¶ 15). A single incident will only give rise to deliberate indifference liability where "the risk of the plaintiff's injury . . . [is] a highly predictable consequence of the defendant's failure to provide the specific training at issue." *Rivera v. Sch. Dist. of City of York*, No. 22-914, 2023 WL 12087107, at *22 (M.D. Pa. Dec. 4, 2023) (citation modified), *R. & R. adopted*, 22-914, 2024 WL 5694667 (M.D. Pa. Jan. 5, 2024).

Based on these undisputed facts, the Court finds that Plaintiff failed to establish that Robinson Defendants were deliberately indifferent. *Rollins ex rel. Est. of Salaam v. City of Newark*, No. 18-14473, 2020 WL 1528035, at *3 n.3 (D.N.J. Mar. 31, 2020) (explaining that "[l]iability in single-incident" deliberate indifference cases "depends on the likelihood that the situation will recur" (citation modified)); *Brooks v. City of Philadelphia*, 747 F. Supp. 2d 477, 484 (E.D. Pa. 2010) (granting summary judgment and finding, in a Title IX action, that defendants were not deliberately indifferent where they transferred the plaintiff parents' minor child after a second incident of sexual harassment); *Hodges v. Wilson*, 341 F. App'x 846, 849 (3d Cir. 2009) (holding that a single fight between cellmates was insufficient to support a deliberate indifference claim).

The Court, accordingly, dismisses Plaintiff's First and Third Claims for Relief against Robinson Defendants.

### 2.    *Negligent Hiring and Supervision—Seventh and Eighth Claims for Relief*

Robinson Defendants argue that Plaintiff's constitutional claims brought pursuant to a negligent hiring and supervision theory fails as a matter of law because Plaintiff did not submit an expert report or testimony to support such allegations. (Robinson Defs.' Moving Br. 4-9, 12-14.) To establish a claim of negligent hiring or supervision, a Plaintiff must prove that:

> (1) the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons[;] and (2) the employer's negligence in hiring [or supervising] the employee resulted in the dangerous attribute proximately causing plaintiff's injury.

*Fogg v. Twp. of Montclair Dep't of Police*, No. 23-809, 2025 WL 1378896, at *5 (D.N.J. May 13, 2025) (quoting *Johnson v. Provenzano*, No. 12-1253, 2014 WL 7011545, at *9 (D.N.J. Dec. 11, 2014), *aff'd*, 646 F. App'x 279 (3d Cir. 2016)).

Here, Plaintiff has failed to establish that Robinson Defendants knew or had reason to know of any unfitness, incompetence, or dangerous attributes of Norman such that Robinson Defendants could have foreseen a risk of harm to Robinson residents. (*See generally* RSOF; PRSOF.) It is undisputed that: (1) Robinson Defendants conducted a background check on Norman which Norman passed prior to his employment (RSOF ¶ 10; PRSOF ¶ 10); (2) Norman was provided with an employee handbook, which outlined prohibited behavior including fraternization with residents and any act of harassment—sexual, racial or other—that he acknowledged receipt of (RSOF ¶¶ 11-13, 20-21; PRSOF ¶¶ 11-13, 20-21); (3) Norman received trainings that "included . . . policies, rules and regulations, [on] the . . . [PREA], [s]exual [h]arrassment, [d]iversity, HIPAA and ethics, and security" (RSOF ¶¶ 13-14; PRSOF ¶¶ 13-14); (4) Norman filled out and executed an Annual PREA Disclosure, where he certified that during his employment, "he did not engage in or receive disciplinary action for any form of sexual misconduct" (RSOF ¶ 15;

21

PRSOF ¶ 15); (5) Robinson Defendants instructed all employees that they were not permitted to engage in sexual relationships with residents (RSOF ¶ 16; PRSOF ¶ 16); (6) all new hires underwent a minimum of "forty . . . hours of orientation training in a classroom setting[,]" and that "[a]fter completing th[at] [o]rientation[,] they "under[went] on-the-job training of an additional forty . . . hours," and "[a]fter the first year of employment, . . . receive[d] a[] minimum of forty . . . hours of in-service training each year" (RSOF ¶¶ 17-19; PRSOF ¶¶ 17-19); and (7) there were no previous allegations of misconduct against Norman (*see generally* RSOF; PRSOF).

Based on these undisputed facts, Plaintiff has failed to establish negligent hiring or supervision on the part of Robinson Defendants, and the Court therefore grants summary judgment in favor of Robinson Defendants as to Plaintiff's Seventh and Eighth Claims for Relief. *Rankines v. Meyrick*, No. 14-1842, 2016 WL 545134, at *8 (D.N.J. Feb. 10, 2016) (granting summary judgment where, among other things, there was "no evidence in the record" that the employer "knew of any propensities of" the defendant employee to act in an improper manner).

The Court, accordingly, dismisses Plaintiff's Seventh and Eighth Claims for Relief.

### 3. *Plaintiff's Tort Vicarious Liability Claims—Sixth Claim for Relief*

Robinson Defendants argue that Plaintiff has failed to establish their liability pursuant to a theory of vicarious liability. (Robinson Defs.' Moving Br. 9-12.)

To succeed on a claim for vicarious liability, a plaintiff must prove: "(1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." *Siemens Bldg. Techs., Inc. v. PNC Fin. Servs. Grp. Inc.*, 226 F. App'x 192, 195 (3d Cir. 2007) (quoting *Carter v. Reynolds*, 815 A.2d 460, 463-64 (N.J. 2003). New Jersey courts evaluate whether an employee's conduct falls within the scope of employment by considering whether: (1) the conduct is of the kind the employee is employed to perform; (2) the

conduct occurs substantially within the authorized time and space limits of employment; and (3) the conduct is carried out, at least in part, for the purpose of serving the employer. *See Carter*, 815 A.2d at 465 (citing Restatement (Second) of Agency § 228 (1958)).

Here, there is at least a dispute of fact as to whether Norman was acting within the scope of his employment when he allegedly committed the assault. Norman sought Plaintiff's assistance for trash duty and directed Plaintiff into the elevator to complete such trash duty. (NSOF ¶¶ 24-26; PNSOF ¶¶ 24-26.) Norman then allegedly sexually assaulted Plaintiff in the elevator. (NSOF ¶¶ 27-32; PNSOF ¶¶ 27-32.) Here, although any such assault would, of course, be beyond the scope of Norman's employment, *see Davis v. Devereux Found.*, 37 A.3d 469, 492 (N.J. 2012), there is at least a dispute of fact as to whether Norman used his position as a counselor at Robinson to commit the assault. Because the "trash duty" that Norman and Plaintiff were engaged in prior to the assault took place during Norman's hours of employment and at his place of employment, and were part of his job duties (*see* RSOF ¶ 25; PRSOF ¶ 25; NSOF ¶¶ 24-27, 30-34; PNSOF ¶¶ 24-27, 30-34), a reasonable juror could find that the assault occurred within the scope of Norman's employment. *See Carter*, 815 A.2d at 465; *Brijall v. Harrah's Atl. City*, 905 F. Supp. 2d 617, 623 (D.N.J. 2012) (denying employer's motion for summary judgment where there was a dispute of fact as to whether its employee was acting within the scope of his employment when he struck the plaintiff); *Curtin v. Club Med, Inc.*, No. 84-4640, 1986 WL 788, at *1-2 (E.D. Pa. Jan. 9, 1986) (denying defendant employer's motion for summary judgment and finding that there was a dispute of fact as to whether the defendant employer's employee was acting within the scope of his employment when he "attacked, assaulted, and struck the plaintiff after plaintiff refused [the employee's] sexual advances").

The Court therefore denies Robinson Defendants' Motion for Summary Judgment on Plaintiff's Sixth Claim for Relief.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motions for Summary Judgment. The Court will issue an order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: JULY 14th, 2026

_____

[5] As noted above, although Plaintiff pled punitive damages as a claim for relief, damages are a remedy, and not an independent claim for relief. *See Bellak*, 2017 WL 6496563, at *5. Because several of Plaintiff's Claims for Relief survive Defendants' Motions for Summary Judgment, judgment on the issue of damages would be premature. *See Michaels v. Rutgers Univ. N.J. Med. Sch.*, No. 15-7603, 2019 WL 625804, at *13 (D.N.J. Feb. 14, 2019). Additionally, "[b]ecause . . . [P]lantiff has failed to name the fictitious defendants, the Court will dismiss [Plaintiff's Tenth Claim for Relief] asserted against" them. *Ayala v. McCormick*, No. 09-3484, 2014 WL 1292668, at *10 (D.N.J. Mar. 31, 2014).

24